Before STATE INDUSTRIAL BOARD, Respondent.

In the Matter of the Claim of ANNA GREENBERG, Respondent, for Compensation under the Workmen's Compensation Law for the the Death of ALEXANDER GREENBERG, v. MAX GREENBERG, Employer, and ÆTNA LIFE INSURANCE COMPANY, Insurance Carrier, Appellants.

Third Department, November 15, 1922.

Workmen's Compensation Law — employee killed in elevator — employee not permitted to operate elevator — elevator started as employee was boarding it with bundle — evidence does not justify finding that elevator started without employee touching starting wheel with hands — inference from evidence is contrary to that conclusion — question whether deceased deliberately operated elevator is jurisdictional and presumptions under Workmen's Compensation Law, § 21, cannot aid — case remitted for further proof.

Claimant's intestate was employed as a painter and at the time of his death he and a fellow-employee were putting their tools and other paraphernalia on an elevator in the building in which they were working for the purpose of taking them to the cellar. The fellow-employee had entered the elevator and he testified that as he turned around he saw that the elevator had started upwards and that the decedent was "between the car" but he did not give any testimony, nor was any other testimony introduced, to show the exact situation of the two men at

the time of the accident. It did appear, however, that the decedent entered the elevator with a bundle of cloth. The decedent had been warned not to run the elevator himself which, from the evidence, apparently he was anxious to do.

*Held,* that the evidence does not justify the finding that the elevator started upward without the decedent touching the wheel or switch with his hands.

In view of the decedent's apparent eagerness to operate the elevator and the fact that in order to start the elevator upward it was necessary to turn the switch wheel once and a half around, whereas to start it downward required only a half turn of the wheel, the inference is that the elevator was started by the deliberate act of the decedent and, therefore, the accident did not arise out of and in the course of his employment.

The determination of the question as to whether the accident arose out of decedent's employment, depending upon whether or not he was operating the elevator in violation of orders, is jurisdictional in character and must be proved by direct or circumstantial evidence and cannot be aided by any of the presumptions set out in section 21 of the Workmen's Compensation Law.

The award should, therefore, be reversed and the claim remitted to the State Industrial Board for further proof.

APPEAL by the defendants, Max Greenberg and another, from a decision and award of the State Industrial Board, made on the 27th day of June, 1921.

*T. Carlyle Jones,* for the appellants.

*Charles D. Newton, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondent State Industrial Board.

*Wilmer J. McAllister,* for the claimant, respondent.

HINMAN, J.:

This case was before this court once before (193 App. Div. 574), and the award was reversed and the claim remitted to the Commission for further action on the ground that the Commission had made alternative findings on the vital question in the case.

The deceased was a painter working as an employee of a painting contractor in the interior painting of an apartment house away from the plant of the employer. The deceased was working on the main floor of the apartment house and at four-thirty in the afternoon he and his co-employee were carrying into the elevator their paraphernalia including ladders, paint pots and canvases, which had been spread upon the floor to protect the floor from paint, called "drop cloths." They were finishing their work for the day and were clearing the hall of this paraphernalia as their custom was each night by taking the same down to the cellar of the apartment house. It is undisputed that their sole intention was to take them down to the cellar. There is no theory advanced by either party that there could have been any intention to take them up to any of the upper floors. His co-employee had preceded him in

going into the elevator carrying some planks which he had set up in the corner.   This fellow-employee, who was the sole eye-witness, says that the deceased followed him with four or five of these " drop cloths," which were large.   After setting the planks down in the corner of the elevator he turned around and saw the car going up.   He heard an outcry from the deceased and he says that Greenberg was " between the car."   He does not say between the car and what else and his testimony is not very understandable. He says: " I seen him going in between the car.   Q. You mean he was down on the floor of the car?   A. No the car went up and half was laying in the car and half between the car."   He says that the deceased was near the switch but that he did not see the deceased touch the switch or the wheel which constituted the switch.   This wheel was apparently directly in front of the door leading into the elevator which was a narrow door " only wide for a person to get in."   Apparently the car was in operation at the time when this witness turned around and saw the predicament of the deceased.

The case was very poorly tried in that it is wholly lacking in the details of proof as to the exact location of the wheel with reference to the door and the exact location and size of the bundle of " drop cloths " which the witness says were afterwards found entirely within the car, and in information as to the exact location of the body of the deceased when witness first looked, with reference to the doorway in which deceased was caught, or as to whether he was caught with his feet out of the elevator or his head out of the elevator, or as to any of his movements from the time that he first saw him until the time when he was caught between the floor of the car and the top of the elevator doorway, or the floor above, whichever it was.   There is no evidence from which any inference can be drawn as to whether he stumbled over the " drop cloths " or anything else as he was going in or going back for more materials to place in the elevator or whether that was impossible or improbable.   There are no facts from which an inference can be drawn as to whether the position of his body when first discovered was such as to indicate an impossibility or even improbability that he had been handling the wheel which operated the elevator. There is no testimony, direct or circumstantial, to prove that in forcing his way into the elevator with a large bundle and brushing against this handle, which by reason of the bundle in his arms might have been concealed from his view, he had disturbed the position of the handle; that it had caught on the canvas and in straightening up to get clear of it he had unconsciously changed the handle from its neutral position to another position which had started the car upward and the movement of the car had thrown

him over backwards with a portion of his body overlapping the doorway.

When the case went back to the Commission no further testimony was taken and the State Industrial Board, as successor to the Commission, has found that " the elevator car suddenly started up from some cause unknown but without the said Alexander Greenberg touching the wheel or switch of said car with his hands and the said Alexander Greenberg was thrown to the floor of said elevator car and his body caught between the floor of said car and the first floor of said building and was crushed to death."

There was unquestionably an accident arising in the course of the deceased's employment but the vital question in the case is as to whether the accident arose out of his employment. It is conceded that it was not within his employment to operate this elevator and that his employer had earlier that very day ordered him not to operate it. The owner of the building had elevatormen whose duty it was to operate the same and the deceased had shown a disposition to operate the elevator prior to this order of his employer even after the regular elevatorman had protested against his doing so. In view of his apparent eagerness to operate the elevator and the absence of any proof sufficient to satisfy the State Industrial Board as to the assignment of any other specific cause for the starting of the elevator at the time, it becomes a fair inference under the paucity of proofs in this case that the deceased might have started the elevator voluntarily or accidentally by meddling with the wheel. This is rather borne out by the fact that apparently the elevator had been last run from an upper story to this main floor and that while, with the mechanism provided, the elevator could have been started downward again by only a half turn of the wheel, it was necessary to give it a turn and a half in the opposite direction in order to start the elevator upward. The fact is that the elevator started upward when the deceased was injured. Under these circumstances we cannot say that there is any fair inference to be drawn from the facts proved that the elevator was started upward by the operating mechanism being caught in the " drop cloths " which the deceased was placing in the elevator.

There is no other fair hypothesis by which to account for the sudden starting of the elevator and yet the State Industrial Board has found that the car started " without the said Alexander Greenberg touching the wheel or switch of said car with his hands." We think that there is no evidence to sustain this finding but that the contrary is the only fair inference that can be drawn from the meager testimony in this case. We think that further testimony should be taken and a more accurate description obtained as to just what

the witness Steinberg did see when he turned around and witnessed the accident. The determination of the question as to whether the accident to the deceased arose out of his employment, depending upon whether or not he was operating the elevator, is jurisdictional in character and must be proved by direct or circumstantial evidence, unaided by the presumptions set forth in section 21 of the Workmen's Compensation Law. (*Matter of Gifford* v. *Patterson, Inc.,* 222 N. Y. 4; *Matter of Daly* v. *Bates & Roberts,* 224 id. 126; *Matter of Hansen* v. *Turner Construction Co.,* Id. 331; *Matter of Eldridge* v. *Endicott, Johnson & Co.,* 228 id. 21; *Matter of Lorchitsky* v. *Gotham Folding Box Co.,* 230 id. 8; *Matter of Collins* v. *Brooklyn Union Gas Co.,* 171 App. Div. 381; *White* v. *American Society for Prevention of Cruelty to Animals,* 191 id. 6; *Minerly* v. *Kingsbury Const. Co.,* Id. 618; *McHale* v. *Sheffield Farms Co., Inc.,* 193 id. 541; *Russo* v. *Jarvis Stores, Inc.,* Id. 587; *Joseph* v. *United Kimono Co.,* 194 id. 568; *Pinto* v. *Chelsea Fibre Mills,* 196 id. 221; *Kelly* v. *Nichols,* 199 id. 870.)

The award should be reversed and the claim remitted to the State Industrial Board for further action, with costs to the appellants to abide the event.

H. T. KELLOGG, Acting P. J., KILEY, VAN KIRK and HASBROUCK, JJ., concur.

Award reversed and claim remitted to the State Industrial Board, with costs to the appellants against the State Industrial Board to abide the event.